*Coggin & Witt, Ralph H. Witt,* for appellants.
*Andrew J. Hill, Jr.,* for appellees.

## 39760. POTEAT v. THE STATE.

MARSHALL, Presiding Justice.

Dewey Lawson Poteat appeals from his conviction, in a consolidated trial, of the 1979 murder of Larry Paul Stephens and the 1981 murders of Donna Luck and Frances Canup, for which he was sentenced to three consecutive life sentences.

1. The appellant contends that the verdict was contrary to law, contrary to the evidence and strongly against the weight of the evidence in the case as to victim Stephens.

There was evidence adduced at trial which authorized a rational trier of fact to find as follows. The cause of death was a gunshot wound to the chest, caused by a large-caliber bullet consistent with that which would have been fired from a deer rifle. The appellant admitted that he owned a deer rifle, but stated that Stephens had asked to use the rifle for an alleged robbery to be committed by him. The appellant and the victim were driving around in the appellant's truck, and were seen by the victim's wife at approximately 5:10 p.m. on the day of the murder, the victim's body having been discovered about 8:00 p.m. At 2:00 p.m. on the day of the murder, the appellant told Judy Wiggley, with whom he was living at the time, that he was going to kill Stephens. Wiggley confided to her mother, Helen Allison, that the appellant had threatened to kill her and Stephens. Mrs. Stephens began to look for her husband, and drove to the appellant's home. While she was there, the appellant drove up in his truck, alone. When Mrs. Stephens asked the appellant where her husband was, the appellant told her that he was at the garage, but she told the appellant that her husband, Larry, was not there and that she had seen the two men together, whereupon the appellant told her that Stephens was with another woman. Investigators were unable to confirm the appellant's version of the events on the day of the crime. The appellant never mentioned to the police about his and Larry's meeting girls at the Beagle Club. The appellant later made the statement to Bobby Jones, referring to the victim-to-be, Donna Luck,

that "Well, you know ain't nobody slapping me. You know, Larry, you know what happened to him. No damn woman gonna slap me and live to tell it."

The evidence authorized the verdict and judgment as to victim Stephens, under the standard of Jackson v. Virginia, 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Regarding the same contention as to the verdict as to victims Luck and Canup, there was evidence as follows. Luck and the appellant had argued, and Luck had slapped the appellant. The appellant swore that he would kill Luck for slapping him, and proclaimed that no woman had ever slapped him and lived. Mrs. Luck was frightened by the appellant's threat, and reported the argument to six persons. She was afraid of him and was trying to find where he was because he still had a key to her trailer. The appellant also told his friends about the argument with Luck and that she had slapped him. As was noted in Division 1, supra, the appellant, holding a rifle in his hand, told Bobby Jones, "No damn woman gonna slap me and live to tell it." The appellant attempted to obtain a pistol, allegedly for the purpose of committing a robbery. He was unable to obtain a pistol, but did obtain a .22-caliber rifle with a magazine and a box of shells. Three unfired .22-caliber automatic rifle bullets and four unspent rifle bullets were found at the scene of the crime, lying around the bodies of Luck and Canup. Both of the female victims were killed by .22-caliber gunshot wounds, and a firearms expert testified that the cartridge cases found at the scene were fired from the appellant's gun and that the bullet recovered from Mrs. Canup was possibly fired from his gun. The appellant was seen around Mrs. Luck's premises about the time of the homicides, having moved out of her trailer after the fight and the threats. His clothing was found in the river along with the murder weapon. The two victims were last seen alive heading to a cabin at 5:30 p.m. on Sunday. Late that night, the appellant telephoned a friend from a pay booth near a highway, and, talking fast and out of breath, told her, "Well, Donna is gone."

The evidence likewise authorized the verdict and judgment as to victims Luck and Canup, under the standard of Jackson v. Virginia, supra.

3. The appellant argues that the trial judge erred in failing, without a request, to charge the jury the provisions of OCGA § 24-9-85 (b) (Code Ann. § 38-1806), i.e.: "If a witness shall willfully and knowingly swear falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." Pointing out that the state's key witness in the Stephens case had admitted lying under oath at the preliminary hearing, he cites us to *Martin v. State,* 93 Ga. App. 580 (2) (92 SE2d 233) (1956)

and cits., to the effect that this charge should be given even without a request in these circumstances.

Even conceding the applicability of the above, we note that the language of the Code section was substantially given by the judge, wherein he instructed in detail about the believability of witnesses and disbelieving a discredited witness. Furthermore, there was no exception made to the charge as given in this regard. The charge as a whole substantially covered the principle urged; therefore, the failure to charge in the exact language of the Code section was not error.

4. At the trial, Judy Wiggley testified against the appellant, and told the jury that the appellant had told her that he was going to kill Larry Stephens. Throughout the cross-examination of Ms. Wiggley by counsel for the appellant, the credibility of Ms. Wiggley was attacked and her motives for giving testimony against the appellant were examined. Specifically, defense counsel questioned her as to why she had not told anyone sooner about the appellant's threatening Stephens. He also attempted to establish that, after the appellant and Ms. Wiggley broke up, the appellant had discontinued giving her money, and that this was a possible motive for her testimony against the appellant. Ms. Wiggley testified that she did not tell the police at a prior time because she was frightened of the appellant. The appellant's counsel questioned Ms. Wiggley as to why she never asked the defendant if he, in fact, had killed Larry Stephens. She was also asked why she had continued cohabiting with the appellant and never asking him if he had killed Stephens.

Following cross-examination of Ms. Wiggley, the state was permitted to introduce the testimony of Helen Allison, Ms. Wiggley's mother, to the effect that Judy Wiggley had reported the fact of threats made to her by the appellant about two weeks after the murder of Stephens. The appellant objected, then and on appeal, that this was inadmissible hearsay, and does not fit within any of the exceptions recognized by the Code.

OCGA § 24-3-2 (Code Ann. § 38-302) provides: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence." The defendant, by questioning witness Judy Wiggley as to her reasons for not having revealed the defendant's threats earlier, thereby attacked her credibility and raised the issue of her conduct, motives and state of mind. Under the above Code section and our case law, the witness' mother's testimony was admissible, not for the purpose of proving the truth of what was stated, but only to show that they were in fact made. See Agnor, Georgia Evidence, § 11-25, p. 236 and cits. The trial court here, as was similarly done by the trial court

in the case of *Anderson v. State,* 247 Ga. 397, 398 (1) (276 SE2d 603) (1981), clearly instructed the jury to the effect that the mother's testimony was admitted, not as to the truth of the facts already testified to by her daughter, but as to what the daughter had told her, and to illustrate that fear was the motivation for not having revealed the threat generally and earlier. Furthermore, the right of confrontation, the deprivation of which we held not to render the statute unconstitutional (*Harrell v. State,* 241 Ga. 181, 185 (243 SE2d 890) (1978)), was not involved here, as all the parties involved — the defendant, Judy Wiggley and her mother — were under oath, subject to full cross-examination, and present for the jury to observe their demeanor while testifying as to these statements.

This enumeration of error is without merit.

5. The appellant argues that the trial court should not have permitted the joinder of the two indictments, which was harmful, prejudicial, hence error, and that the court should have granted a severance on its own motion without a request. "The right to a severance under both the Georgia law and the American Bar Association Standards Relating to the Administration of Criminal Justice arises only upon an appropriate motion. No motion to sever having been made in the trial court, the contention is without merit." *Coachman v. State,* 236 Ga. 473, 474 (1) (224 SE2d 36) (1976). Not only was no motion for severance made in this case, but also, when the case was called for trial, the court stated: "As I understand, we will be trying both cases by agreement of counsel for the defendant, is that correct?" Counsel for the appellant replied, "That's correct, your Honor." This contention is without merit.

6. The appellant contends finally that the trial court erred by allowing the district attorney to state matters in his opening statement that were not proven in the trial of the case, i.e., "The state expects their testimony to show that, unbeknown to Larry Stephens, his long-time friend, D. L. Poteat, had gotten very angry with him and was in a rage at him, for either some aggrieved or imagined aggrievement, possibly between Larry and the woman that Larry was living with, a Judy Wiggley . . ." He argues that there is simply no evidence in the record supporting any aggrievement between Larry Stephens and Judy Wiggley, and that such "testimony" by the district attorney was harmful, prejudicial and error. He also complains that the following opening statement was similarly improper, as stating facts not presented in evidence, and requiring curative instructions from the trial court: "We expect to show that all those statements [quoted thereinabove] are so conflicting with each other that he [the appellant], being the last person alive with him [Stephens], being in possession of the type of weapon he was killed

by, and the body being found so quickly from the time he drove from where that spot was to his home, that you will return a verdict of guilty."

"The prosecution in its opening statement is permitted to state what it intends to prove. [Cit.] . . . The opening statement is not evidence . . ." *Highfield v. State,* 246 Ga. 478, 482 (3) (272 SE2d 62) (1980). "[U]nder no circumstances should the prosecuting attorney become a witness in behalf of the state." *Hall v. State,* 138 Ga. App. 20 (1) (225 SE2d 705) (1976). In this case, the district attorney did not become a witness for the state, as he prefaced his remarks to the jury by stating that the opening statement itself did not constitute evidence, and that all of the matters to which he referred in his opening statement constituted matters which the state expected to show by means of the testimony of various witnesses. Even where objections are made to opposing counsel's argument, "the trial court is vested with certain discretion which will not be disturbed on appeal except in clear cases of abuse. [Cits.]" *Marshall v. State,* 239 Ga. 101, 104 (3) (236 SE2d 58) (1977). Here, however, even if the complained of argument could be determined to be error, it was not objected to at trial, nor a curative instruction sought. This contention is without merit.

The verdict and judgment were not error, for any reason urged or otherwise.

*Judgment affirmed. All the Justices concur, except Gregory, J., not participating.*

DECIDED JUNE 6, 1983 —
REHEARING DENIED JUNE 21, 1983.

*Webb, Fowler & Tanner, J. Michael McGarity,* for appellant.
*W. Bryant Huff, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.