39604. OWENS v. THE STATE.
39610, 39611. LUMPKIN v. THE STATE (two cases).

CLARKE, Justice.

On November 3, 1981, the appellants, Charles Edward Owens and Gregory Hughes Lumpkin were indicted along with Larry Gene Heath, Jerry Wayne Heath, Denise Page Lambert and Sanders Williams for the murder of Rebecca McGuire Heath, the wife of co-indictee Larry Heath. The state initially sought the death penalty in the cases of Larry Heath, Owens and Lumpkin.

The state waived the death penalty as to Larry Heath and he entered a plea of guilty to the murder and was sentenced to life in prison in February of 1982. Lumpkin was arraigned on April 12, 1982; Owens was arraigned April 16. It was then announced that the state was withdrawing its request for the death penalty and announced it would try Owens jointly with Lumpkin on April 26, 1982. On April 20, 1982, co-defendants Lambert and Jerry Heath entered pleas of guilty to conspiracy to commit a crime. Co-defendant Williams was also permitted to enter a plea to conspiracy.

Owens and Lumpkin were tried jointly, convicted of murder and sentenced to life imprisonment. Their respective motions for new trial were denied and each has filed a separate appeal to this court. The facts at trial and many of the enumerations of error are the same and we have consolidated the cases into one opinion.

The body of Rebecca Heath was found in her automobile on the morning of August 31, 1981, off of Highway 185 in Troup County, Georgia. The cause of death was a single gunshot to the head. Rebecca and her husband Larry Heath lived in Phenix City, Alabama. A neighbor of the Heaths' testified that he observed the Heath car and a truck which belonged to Denise Lambert in the road near the Heath home at 7:15 a.m. on August 31, 1981, and stated the vehicles were side-by-side and the occupants appeared to be having a conversation. A motorist on Highway 185 testified that on the same morning at approximately 9:15 a.m. he observed the Heath car on the edge of the woods. He also testified that as he approached he saw a light blue Mustang leave the area at a high rate of speed. Another motorist saw the Heath car at around 11:00 a.m.; he investigated the scene and discovered the body.

The bulk of the state's case consisted of the testimony of the alleged co-conspirators, Lambert, Williams and Jerry Heath, who had all previously entered pleas to the lesser offense of conspiracy.

1. Motions were filed by the appellants prior to trial for disclosure of any agreements entered into by the state and any prosecution witnesses which might influence their testimony. These motions were granted by the court. Prior to trial the prosecutor stated that the three co-defendants had been allowed to enter pleas to conspiracy but that there had been no agreements on sentencing. The state made a motion in limine to prohibit defense counsel from cross-examining the co-defendants on their sentencing as a result of their pleas. The court granted this motion.

The appellants contend that the prosecution failed to disclose an agreement with Jerry Heath's attorney that the state would recommend a sentence of ten years to serve two. It has been held that failure to disclose such an agreement constitutes a violation of the due process requirements of Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). Giglio v. United States, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972). They also contend that the trial court abused its discretion in limiting cross-examination of the state's main witnesses on the issue of possible punishments and that this was reversible error under our holding in *Hines v. State,* 249 Ga. 257 (290 SE2d 911) (1982). The state contends that there was no actual agreement as to a recommendation of a sentence for Jerry Heath and therefore no disclosure was required under Brady and Giglio. It is also contended that if there was error in the court's grant of the state's motion to limit cross-examination, such error was harmless.

At the hearing on the appellants' motion for new trial evidence was presented on plea negotiations between Mack Reynolds, counsel for Jerry Heath, and Mr. Mallory, the district attorney. Mr. Reynolds

testified that Jerry Heath informed him that if a bargain could be reached with the state he would testify in exchange for two years of jail time. Mr. Reynolds approached Mr. Mallory and they entered into discussions on plea bargaining. They discussed the subject on more than one occasion. According to Mr. Reynolds, Mr. Mallory told him he was willing to go along with ten years to serve two, that he would make that recommendation to the trial court but that he was unable to enter into a firm agreement at that time. Mr. Reynolds stated that he told Jerry Heath that there was no firm commitment on sentencing but that there was a "gentlemen's agreement" to recommend ten to serve two, "And I told Jerry that Art's [Mr. Mallory] word was all I needed and I felt like it was all he needed."

Mr. Mallory testified that he had several discussions with Mr. Reynolds and that Mr. Reynolds was proposing to exchange Jerry Heath's testimony for a sentence of ten years to serve two and that Mr. Reynolds was very persistent. Mr. Mallory stated that he listened to Mr. Reynolds and agreed to consider all the factors in Jerry's case but told him that he could not make any recommendation at that time and could not enter into an agreement on a recommendation. He testified that Mr. Reynolds must have misunderstood his position.

Under Giglio, the state is under a duty to reveal any agreement with a witness, even an informal one. The trial court after hearing the above evidence, denied the motion for new trial which implies a finding, as the trier of fact, that no agreement existed. We cannot say that there was an undisclosed agreement and therefore we find no due process violation under Brady and Giglio for failure to disclose by the prosecutor.

However, the grant of the state's motion in limine and the restriction of cross-examination of the co-indictees who testified for the prosecution is error under the holding in *Hines v. State,* supra. During cross-examination of Jerry Heath by defense counsel the following exchange took place:

"Q. Have you talked with your attorney about what possible sentence you might receive?

"A. We've talked with them.

"Q. Do you know what it will be?

"A. No, sir, I sure don't.

"Mr. Mallory: Your Honor, once again, I think —

"The Court: Yes, we had a Motion in Limine about that, Mr. Kirby.

"Mr. Mallory: I think Mr. Kirby is well aware of that Motion, Your Honor."

During cross-examination of co-indictee Sanders Williams

there was this exchange:

"Q. Now, you've come into court and pled guilty to the crime of conspiracy to commit murder, haven't you?

"A. Sure.

"Q. But you're already serving a life sentence, aren't you?

"A. Sure.

"Q. So that conspiracy charge doesn't really mean much to a man like you, does it?

"Mr. Mallory: Your Honor, he's going into an area —

"The Court: Yes, sir. We had a motion about penalties.

"Mr. Mallory: That's the second time that's occurred, Your Honor.

"The Court: About punishment for these things, Mr. Kirby. And this is the second time and I'll ask you to refrain from going into punishment."

"As we read Davis v. Alaska, 415 U. S. 308 (94 SC 1105, 39 LE2d 347) (1974), and the cases cited therein, it appears to us that these decisions interpret the Confrontation Clause of the Sixth Amendment, as applicable to the states through the Due Process Clause of the Fourteenth Amendment, as guaranteeing the defendant in a criminal trial both the general right to cross-examine witnesses against him and the more specific right to cross-examine a key state's witness concerning pending criminal charges against the witness." *Hines v. State,* supra at 259. In *Hines,* the court granted the state's motion to prohibit defense counsel from cross-examining a key state's witness as to separate criminal charges against him and whether he expected favorable treatment as a result of his testimony against Hines. The prosecutor stated that no agreements had been made with the witness. The Court of Appeals held that such restriction was within the discretion of the court. *Hines v. State,* 160 Ga. App. 546 (287 SE2d 584) (1982).

In reversing this decision and the conviction, we pointed out that exposing the motives of a state's witness for testifying is always relevant in attacking the credibility of the witness. " ' "It is especially important in a case where a witness or an accomplice may have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness." United States v. Crumley, 565 F2d 945, 949 (5th Cir. 1978). *Whether or not such a deal existed is not crucial. [Cit.] What counts is whether the witness may be shading his testimony in an effort to please the prosecution.' " Hines,* supra, at 260. (Emphasis supplied.)

Under *Hines* and Davis v. Alaska, it does not matter whether there was an actual agreement to allow Jerry Heath to receive two

years in prison. What is relevant was what Jerry Heath believed as it reflected on his motives in testifying. His attorney testified that it was clear in Jerry's mind that a favorable sentencing recommendation would be made. Similarly, it was a relevant subject of cross-examination to determine if Williams believed he might get a concurrent sentence.

Jerry Heath and Williams were unquestionably key prosecution witnesses. The trial court erred in granting the motion in limine to prohibit the cross-examination on their motives in testifying. Such error mandates reversal and a new trial. *Hines,* 249 Ga., supra.

2. The appellants filed a motion in limine to restrict the state from using statements of co-defendants unless they would be available for cross-examination. The trial court granted this motion. During the testimony of Williams and Jerry Heath each referred to statements made to him by Larry Heath. When the state called Larry Heath to testify he chose to invoke his Fifth Amendment privilege and refused to testify. The appellants contend that the admission of the statements attributable to Larry Heath without his being available to cross-examination violated their Sixth Amendment rights to confrontation of witnesses under the authority of Bruton v. United States, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). The state contends the trial judge properly allowed the statements under OCGA § 24-3-5 (Code Ann. § 38-306) as declarations of a co-conspirator and under the authority of *Mooney v. State,* 243 Ga. 373 (254 SE2d 337) (1979).

Jerry Heath testified that his brother Larry Heath approached him around the first of August, 1981, to inquire if Jerry knew of someone he could hire to commit murder. Jerry referred him to Charles Owens. He testified that he had known Owens for ten years and saw him at least once a week. He also stated he had known Mr. Lumpkin for some time and that Lumpkin and Owens were friends. Jerry testified that his brother came back to talk to him the first week in August to ask if he knew of anyone else because "these people Larry went to talk to couldn't do anything for him."

Jerry testified that one week later he went by Owens' apartment and found Larry, Owens, Lumpkin and a black male he did not know together there. He stated he then realized Larry was serious about having Rebecca killed.

Williams testified that Owens approached him about handling a killing for someone. He stated that he went with Owens and Lumpkin on August 8, 1981 to meet a guy named Larry at Banner Building Materials in Columbus. Larry told him he wanted his girl friend killed. They drove to the meeting in a white Mustang driven by Lumpkin. Lumpkin stayed in the car while he and Owens got out to

talk to Larry. He testified that Larry gave him $100 as good faith money and also told him he would give him a gun. The next morning the gun was given to him by Owens and he, Owens and Lumpkin drove around and went across the bridge to Alabama. Williams testified he wanted to test the gun and fired it out of the window. Later on he stated that Owens said it was too late to do anything. Williams stated that he left Owens and Lumpkin and kept the gun which he later sold. He stated he did not see Owens or Lumpkin again.

We find the statements attributable to Larry Heath were properly admitted as declarations of a co-conspirator during the course of a conspiracy. Our evidentiary rule contained in OCGA § 24-3-5 (Code Ann. § 38-306) has been found not to violate the confrontation rights of the accused. Dutton v. Evans, 400 U. S. 74 (91 SC 210, 27 LE2d 213) (1970). Another state's witness observed the meeting at Banner Building Materials and identified Larry Heath, Owens and Lumpkin. Denise Lambert testified to the facts that she, Larry, Owens and another black male went to the Heath residence on the morning the body was discovered and also testified as to receiving money from Larry which she paid to Owens after the murder. Reviewing all of the evidence pointing to the fact of a conspiracy involving Larry Heath we find no error in the admission of these statements. See Mooney v. State, supra; Anglin v. State, 244 Ga. 1 (257 SE2d 513) (1979).

3. Appellants contend the trial court erred in overruling a motion to suppress evidence obtained by the Georgia Bureau of Investigation. The sheriff of Troup County requested the assistance of the GBI in this case. The basis for appellants' enumeration of error on this point is that only the district attorney was authorized by law at that time to seek assistance of the GBI. The law provided that any district attorney may request the assistance of the GBI for investigative assistance as well as the head of a municipal or county fire department. Former Code Ann. § 92A-302. OCGA § 35-3-13. Ga. L. 1982, p. 3, OCGA § 35-3-8.1 (Code Ann. § 92A-304.2) specifically permits sheriffs and chief law enforcement officers to make requests for assistance from the GBI.

We do not read OCGA § 35-3-13 (Code Ann. § 92A-302) as being the exclusive list of who may request investigative assistance from the GBI. GBI officers are peace officers with the duty to assist and cooperate in the prevention and detection of violations of the laws of this state and the officers here were within the scope of their authority. See Baxter v. State, 134 Ga. App. 286 (214 SE2d 578) (1975). In any event a violation of OCGA § 35-3-13 (Code Ann. § 92A-302) is not grounds for the suppression of evidence.

4. Appellants filed a plea in abatement challenging the selection

process and the array of the grand and traverse jury panels which was overruled by the trial court.

One member of the grand jury was convicted of a felony after the indictments in these cases. Appellants contend he was incompetent to serve under OCGA § 15-12-60 (Code Ann. § 59-201), which bars convicted felons from serving as grand jurors. The evidence was that although the offense was committed prior to these indictments, the juror had not been charged with a crime or arrested at the time of his service as a grand juror. We find no error.

It was also contended that there was a systematic exclusion of blacks from the grand jury rendering the indictment. There was no evidence presented on the actual racial percentages of the grand jury rendering this indictment or for the traverse jury. Census figures for 1980 showed that approximately 30 percent of Troup County population is black. The juries are drawn from the voter registration list of which 20.06 percent were black. The jury list from which panels were drawn in 1982 was 27 percent black. There was testimony that of the 20 assistant voter registrars, 8 were black and every opportunity was made to register black voters. Two of the jury commissioners are black and there was testimony that all selection of jurors was random, every third name for traverse jurors and every sixth name for grand jurors. We find that under this evidence the trial court did not err in holding there was no systematic exclusion in the jury selection process. See *Hudson v. State,* 240 Ga. 70 (239 SE2d 330) (1977); *Barrow v. State,* 239 Ga. 162 (236 SE2d 257) (1977).

We also find no error in the remaining contentions regarding the overall selection process and purging of lists.

5. The appellants contend the court erred in failing to quash the indictments for murder on the grounds that three co-defendants were permitted to plead to the lesser offense of conspiracy. A party to a crime may be tried for the crime even though an alleged co-party "has not been prosecuted or convicted, or has been convicted of a different crime or degree of crime, or is not amenable to justice or has been acquitted." OCGA § 16-2-21 (Code Ann. § 26-802). Appellants have shown no error.

6. Appellant Owens contends the trial court erred in denying his motion to suppress his statements on the grounds that he had asked for an attorney and the statement was not voluntary. A Jackson-Denno hearing was held and the second statement was suppressed. The law enforcement officers testified that when Owens gave the statement now at issue he was fully advised of his rights and that there was no request for an attorney until after the interview was concluded. The trial court found that the statement was knowingly and voluntarily made. This is a factual issue which will not be

disturbed on review unless clearly erroneous; there was evidence to support the trial judge's finding that the statement was admissible. *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974).

7. Appellant Lumpkin raises the separate enumeration of error that the evidence is insufficient to support his conviction under Jackson v. Virginia, 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979).

There was evidence that Larry Heath sought to enlist aid to murder his wife. It was established that Lumpkin was present in Owens' apartment with Larry Heath a few days after Jerry had sent Larry to Owens. Williams testified that Lumpkin was present when Owens was describing "a dude" who wanted someone killed and that as they discussed it, Lumpkin said "Some one had to do it." Williams also stated that Lumpkin went to the Banner Building where they met with Larry Heath. Another state's witness identified Lumpkin as being at the Banner Building and stated that Lumpkin accompanied Heath around the side of the building with a pouch under his arm. It was also established by several witnesses that Lumpkin drove a white Mustang. Denise Lambert testified that there was a white Mustang used on the morning of the murder. She did testify that Owens drove the Mustang while another black male that she was unable to identify drove the Heath car. She and Larry drove to the Heath home in her truck. In his statement to police officers, Lumpkin admitted that he knew about "the job," that someone had asked him to help find someone to do the job and Lumpkin put Williams in touch with this other person. Lumpkin stated he knew nothing about a Mustang. He stated he left Georgia and went to New Jersey around the first of September. At the trial he did not testify but his brother testified that Lumpkin was at home on the morning of August 31, 1981. Lumpkin's mother also testified that he was at home and that he did not have a car at home that day and that she had not seen a white Mustang for over a week.

While the evidence is circumstantial it is sufficient to show that Lumpkin was a part of the conspiracy to murder Rebecca Heath and in fact the murder did occur according to the plan of the co-conspirators. The evidence supports a finding of guilt for being a party to the crime. OCGA § 16-2-20 (Code Ann. § 26-801).

8. The appellants each contend a denial of due process for failure of the trial court to grant their respective motions to sever.

When the death penalty is waived, as here, the decision of whether the defendants may be tried jointly is in the discretion of the trial judge. OCGA § 17-8-4 (Code Ann. § 27-2101). The denial of a motion to sever is not cause for reversal absent an abuse of discretion. *Cain v. State,* 235 Ga. 128 (218 SE2d 856) (1976).

Ten days before the scheduled trial of Lumpkin, the state

announced it was waiving the death penalty and would try the appellants together. A written motion to sever was filed alleging antagonistic defenses and contending a joint trial would be prejudicial.

The elements to be considered by the trial judge in exercising his discretion are: "whether a joint trial will create confusion of evidence and law; whether there is danger that evidence implicating one defendant will be considered against another defendant despite cautionary instructions to the contrary; and whether the co-defendants will press antagonistic defenses." *Murphy v. State,* 246 Ga. 626, 629 (273 SE2d 2) (1980). A defendant must show more than a better chance of acquittal in a separate trial, he must show prejudice. *Cain, Murphy,* supra.

Appellants state there were numerous disagreements between trial counsel as to trial strategies. Owens contends he was prejudiced because he did not intend to introduce evidence while Lumpkin presented an alibi defense and he thereby lost his right to opening and concluding arguments. Owens also contends that even though his name was excised from Lumpkin's statement to comply with Bruton v. United States, 391 U. S. 123, supra, he was prejudiced by over twenty references to "another named person," or "another person." Lumpkin contends that the evidence was much stronger against his co-defendant and it is likely that his conviction is the result of a "spillover" from the evidence produced against Owens which could mandate a new trial under *Price v. State,* 155 Ga. App. 844 (273 SE2d 225) (1980). The appellants also point to a disagreement over a request to charge.

While counsel for the appellants did not always agree during the procedures, we do not find the numerous disagreements over the exclusion and admission of evidence itself as in *Reeves v. State,* 237 Ga. 1 (226 SE2d 567) (1976). The fact of different defenses or even antagonistic defenses will not of itself require severance. *Cain,* supra. In its charge the court instructed the jury that the guilt or innocence of each of the defendants on trial must be considered independently.

We do not find that the denial of severance amounted to an abuse of discretion which would give rise to a denial of due process to either of these appellants.

9. Appellants complain that a man came into the jury room and explained possible verdicts and sentences. A juror testified that the person also explained that if a defendant was found not guilty he would "walk away." This event took place prior to the publication of the jury's verdict and either just before or just after the jury took its final vote.

We have held that where a communication with a jury is shown,

the burden is on the state to rebut the presumption of harm. *Shaw v. State,* 83 Ga. 92 (9 SE 768) (1889). The state maintains it has carried the burden by evidence that the jury had reached its decision and taken a final vote before the communication took place and that the person only assisted in preparing the verdict.

We cannot find with certainty that the final vote of the jury had taken place prior to the communication. But even if this were true, a problem still exists. The writing of the verdict, the publication of the verdict and possibly the polling of the jurors are all critical phases of jury duty. Cases involving the form of verdicts and uncertainty of jurors expressed during polling are not uncommon on appeal and a jury must be just as free of unauthorized influence during these phases as during its deliberation. "The law contemplates that when a jury are selected and sworn to try a citizen for a felony, they shall be entirely separated from the world, and that no communication whatever shall be had with them, from the beginning of the trial until the verdict is rendered, unless by leave of the court." *Shaw v. State,* supra at 100. The sanctity of the jury room is essential to the impartial conduct of the judicial process. The writing of the verdict, the publication of the verdict and the participation in the poll of the jury being a part of this process, the exposure of the jury to unauthorized outside influence prior to a completion of these phases subjects the judicial process to severe dangers. For these reasons, we are unable to say there was no harm in this instance.

10. We do not address the remaining enumerations of error on change of venue, challenges for cause, and voir dire problems because they are without merit or will not occur on remand.

*Judgment reversed. All the Justices concur, except Weltner, J., who dissents as to Divisions 1 and 9 and the judgment.*

DECIDED JUNE 30, 1983 —
REHEARING DENIED JULY 22, 1983.

*Zachry & Kirby, Louis J. Kirby,* for appellant (case no. 39604).
*Marc E. Acree,* for appellant (case nos. 39610 and 39611).
*Arthur E. Mallory III, District Attorney, Robert H. Sullivan, Blanchette Holland, Assistant District Attorneys, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.