44067. STRICKLAND v. THE STATE.
(357 SE2d 85)

HUNT, Justice.

Robert Strickland, Jr., was convicted by a jury of the murder of his wife, Yvonne Strickland, and sentenced to life imprisonment.[1] He appeals, raising the general grounds and numerous special grounds.

In July 1985, the defendant and victim entered into a separation agreement and were not living together, although they continued to see each other frequently. On October 12, 1985, the defendant broke into the victim's house and discovered the victim and Willie Brewer

---

[1] The victim was killed on October 16, 1985. The defendant was indicted during the November 1985 term in DeKalb County. The jury returned its verdict of guilty on March 1, 1986. Defendant's motion for new trial was filed on March 7, 1986 and denied on September 3, 1986. His notice of appeal was filed on September 25, 1986. The case was docketed in this court on November 13, 1986 and argued on January 21, 1987.

having sexual relations. He shot and wounded Brewer and was arrested and released on bond the next day. On October 16, the defendant killed the victim with a gun he had purchased the previous day. The defendant testified that he shot the victim after they had sexual relations and he proposed a reconciliation, which she rejected, recounting her sexual involvement with other persons. The county medical examiner who performed an autopsy on the victim testified that the victim had been shot three times, two times at close range, and that, in his opinion, the pattern of wounds indicated deliberate, rather than random actions on the part of the defendant. The defendant's primary defense was insanity at the time he shot the victim.

1. Having reviewed the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the defendant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Likewise, the jury's rejection of his insanity defense meets the standard of review of *Brown v. State*, 250 Ga. 66, 71-72 (295 SE2d 727) (1982).

2. The defendant requested and received a charge on voluntary manslaughter. The basis of his claim of provocation requiring such a charge was the victim's adulterous relations which she had recounted just before the shooting. The defendant contends that the trial court's charge "whether the deceased did or did not have relations with another is not relevant to the issues of this case" was contrary to law and erroneously precluded the jury from rendering a verdict of voluntary manslaughter. The charge was given as part of a limiting instruction to the jury immediately prior to the testimony of a defense expert regarding foreign pubic hairs found on the victim. In its limiting instruction, the court charged the jury that the testimony of the expert that foreign pubic hairs were found on the victim should be considered not for the purpose of determining whether the victim had had sexual relations with others but solely for the purpose of determining whether she had recounted her adulterous activity as the defendant claimed just before he shot her.

We agree with the defendant that the charge regarding the irrelevance of the victim's adulterous conduct was error. *Brooks v. State*, 249 Ga. 583, 586 (292 SE2d 694) (1982). In *Brooks*, the defendant's murder conviction was reversed because of the trial court's failure to charge the law of voluntary manslaughter. We noted that while words alone will not constitute sufficient provocation to reduce a crime from murder to manslaughter, the defendant in that case was not provoked merely by the victim's insulting words, but also by her adulterous conduct with which she taunted him prior to the shooting. We also noted that although the victim used words to make the defendant aware of her adultery, it was the victim's adulterous conduct, rather

than her words describing that conduct, which served as sufficient provocation authorizing a charge on voluntary manslaughter. See OCGA § 16-5-2 (a).

Here, the victim's alleged adulterous conduct was not only relevant, but critical to the voluntary manslaughter claim.[2] We agree with the state that the trial court's general charge on the law of voluntary manslaughter was proper. However, although the charge regarding the irrelevance of the victim's adulterous conduct to the issues in this case was given in the context of the consideration to be given the expert's testimony, it was not limited to that context, was given twice — immediately before the testimony of the expert and repeated in the complete charge to the jury at the close of the evidence — and we cannot say that the erroneous charge was not harmful.

3. The defendant contends the trial court erred by improperly limiting cross-examination of a state's witness, Annette Carver. The question asked was whether Carver heard a member of Brewer's family make a death threat regarding the defendant. The threat was allegedly made at the hospital when Carver and the victim were visiting Brewer, who was recuperating from the injuries inflicted by the defendant. The state's objection to that question was sustained on hearsay grounds.

The defendant's purpose for his question was connected to his reason for purchasing the gun with which he killed the victim. He testified that he purchased it because of threats of retaliation, made by members of Brewer's family and communicated to him by the victim. Under those circumstances, we agree with the defendant that such evidence was not hearsay since it was not offered to prove the truth of the substance of the threats. Rather, it was admissible on the issue of the defendant's credibility concerning his explanation of his purpose for acquiring the weapon. See *Poteat v. State*, 251 Ga. 87, 89 (4) (303 SE2d 452) (1983); OCGA § 24-3-2. Its exclusion was error.

4. In defendant's first three enumerations, he contends error in the trial court's exclusion of testimony and evidence in his attempt to impeach the state's key witness, Willie Brewer.

On cross-examination of Brewer, the defendant attempted to introduce testimony and documentation in support of the fact that the

---

[2] Contrary to the view of the dissent, the fact that in their last conversation the victim recounted her adulterous history in a nonprovocative manner is not determinative of the issue of whether there was sufficient provocation to require a charge of voluntary manslaughter. Her adulterous conduct and the relating of it to the defendant under these circumstances, clearly authorized the trial court's implicit determination, unchallenged by the state, that sufficient provocation existed to warrant a charge of voluntary manslaughter. See *Brooks*, supra; *Raines v. State*, 247 Ga. 504 (277 SE2d 47) (1981). Whether the defendant acted solely as a result of a sudden, violent, and irresistible passion caused by such provocation was for the jury to decide, guided by proper legal instruction.

witness had been charged with the crime of theft by taking in Cobb County. The record reflects that the witness did not plead guilty to and was not convicted of that crime, but proceeded under Cobb County's pre-trial diversion program under which the case was dead-docketed pending the successful completion of his participation in that program, scheduled to end on March 17, 1986. The defendant acknowledges that such evidence is ordinarily inadmissible for impeachment purposes. *Thomas v. State*, 178 Ga. App. 674, 675 (344 SE2d 496) (1986). On appeal, he correctly contends that evidence of a pending charge against a witness may be admissible to show the witness' interest in cooperating with the state in order to have the charge against him dismissed or reduced, *Owens v. State*, 251 Ga. 313, 314 (1) (305 SE2d 102) (1983); *Hines v. State*, 249 Ga. 257, 259 (2) (290 SE2d 911) (1982). However, the record fails to reflect that this reason was urged at trial. Rather, the defendant sought to introduce the evidence for improper impeachment purposes. Further, the defendant was permitted to examine Brewer concerning the facts, which Brewer acknowledged, that he sought the defendant's advice on "a matter" and used him as a character reference at the same time Brewer was sexually involved with the victim. Thus, we find no harmful error regarding these enumerations.

5. In his eighth enumeration, the defendant contends the trial court erred by ordering him to submit to a psychiatric examination and by allowing that psychiatrist to testify as a state's witness. We find no merit to the defendant's argument that he was unlawfully deprived of his rights under the Fifth Amendment to the United States Constitution guaranteeing the privilege against self-incrimination. During various pre-trial hearings regarding the defendant's objections to a psychiatric examination, the trial court stated his intention of imposing the sanction of striking the defendant's expert testimony on insanity should the defendant refuse to submit to the examination sought by the state. This sanction would have been appropriate, and does not conflict with the defendant's privilege against self-incrimination. *Motes v. State*, 256 Ga. 831 (353 SE2d 348) (1987).

The defendant also argues that the trial court did not comply with the provisions of OCGA § 17-7-130 regarding expert testimony on the issue of insanity. No such objection was made at trial and we find no harmful error in this regard. However, in the event of a retrial of this case, we note that OCGA § 17-7-130 requires the trial court, on notice by the defendant of his intent to pursue an insanity defense, to appoint an independent psychiatrist or licensed psychologist to examine the defendant. The statute states that the court's expert "shall" testify following the presentation of evidence by the state and the defense, and further provides for cross-examination of the court's expert by the state and the defense. See *Motes v. State*, supra. Of

course, the defendant may invoke his privilege against self-incrimination, refuse to submit to an examination by an independent expert, and thereby forgo the right to present expert testimony on the issue of insanity. Id. The defendant's remaining arguments regarding this enumeration are without merit.

6. In light of the possibility that this case may be retried, we have reviewed the defendant's remaining enumerations and have found no error which would require reversal.

*Judgment reversed. All the Justices concur, except Marshall, C. J., Weltner and Bell, JJ., who dissent.*

WELTNER, Justice, dissenting.

I respectfully dissent.

1. In reversing the conviction, the majority relies upon the case of *Brooks v. State*, 249 Ga. 583, 586 (292 SE2d 694) (1982). The error in that case was the *failure* of the trial court to give a jury instruction on the elements of voluntary manslaughter as a lesser included offense. There, the record showed that the defendant's wife had taunted him about her promiscuous conduct.

2. The jury here *was* charged as to voluntary manslaughter. The error claimed in this case centers upon limiting instructions by the court given in conjunction with the admission of expert testimony.

3. This case differs from *Brooks* in two significant aspects: the trial court gave a full and correct charge on voluntary manslaughter; there was *no* evidence of taunting by this victim. Instead, Strickland said that his wife expressed doubt as to whether the two of them could effect a reconciliation, in that "she had sex with so many different people so much that it just didn't mean anything to her anymore." His testimony continued: "And she started naming the names of the people. There was some I knew about, like Floyd and Willie. . .*and she recounted this and we weren't arguing. We weren't fussing. She was saying all this in just a normal tone of conversation.*" (Emphasis supplied.)

4. Hence, it might be argued that, as there was no evidence of provocation, there was no necessity of the charge on manslaughter; and, without such a necessity, the questioned instruction (as to the the relevance of wife's sexual conduct) was not error. We need not resolve that inquiry, however, as it should be clear that if error there were, it was cured by later instruction.

5. The trial court advised the jury that testimony concerning "foreign pubic hairs" found upon the body of the victim was admitted solely for the purpose of determining whether the conversations to which Strickland testified had occurred, and cautioned the jury that "whether the deceased did or not have sexual relations with another is not relevant to the issues in this case." This instruction was re-

peated at the close of the evidence, in that portion of the charge treating expert testimony. Later, however, the trial court advised the jury:

"I instruct you that a person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder, and if he acts solely as a result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. However, if there should have been an interval between the provocation and the killing, sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder."

Further, the trial court stated "[W]hat circumstances will justify an excitement of passion and exclude all idea of deliberation or malice, the law does not undertake to say. . . . It is for the jury to determine whether the chain of circumstances *and conduct* were sufficient to engender what the law refers to as an irresistible passion. Likewise, the question of cooling time is exclusively for determination by the jury." (Emphasis supplied.)

6. Unlike the defendant in *Brooks*, Strickland was given a full and correct charge on voluntary manslaughter. The jury was instructed that it might consider any matter in determining whether there was sufficient provocation. The jury heard, at great length and without limitation, testimony as to the conduct of the wife, and as to Strickland's reaction thereto. There was no proscription upon Strickland's counsel in arguments to the jury. (In short, the case went to the jury on a defense of insanity, and the jury rejected that defense.)

7. Because the existence of error is itself doubtful, and because any error was cured by later instructions, this conviction should be affirmed.

I am authorized to state that Chief Justice Marshall and Justice Bell join in this dissent.

DECIDED JUNE 24, 1987 —
RECONSIDERATION DENIED JULY 8, 1987.

*Robert Strickland, Jr.,* pro se.
*Carl P. Greenberg,* for appellant.
*Robert E. Wilson, District Attorney, Thomas S. Clegg, Susan Brooks, Assistant District Attorneys, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General,* for appellee.