## S00A0143. MACK v. THE STATE.
(529 SE2d 132)

BENHAM, Chief Justice.

Appellant David Causlee Mack, Jr. was convicted of the malice murder of his wife, and sentenced to life imprisonment.[1] In his appeal, he questions the content of the trial court's jury instruction on voluntary manslaughter and the trial court's denial of his motion

---

[1] The crime occurred on December 27, 1996. Appellant was arrested at the scene and, in an indictment filed March 26, 1997, was charged with malice and felony murder and possession of a firearm during the commission of a crime. The trial began on September 29 and ended with the jury's return of guilty verdicts on all counts on September 30. Appellant's sentence to life imprisonment was filed on October 22, and he filed a motion for new trial on October 29. He amended his motion on February 16 and March 8, 1999, and the motion was denied on June 18, 1999. Appellant filed a notice of appeal on July 13, and his appeal was docketed in this Court on October 8. It has been submitted for decision on briefs.

for new trial on the ground that the verdict is against the weight of the evidence.

1. The victim, Sylvia Hunter, died from a gunshot wound inflicted by a Springfield Arms 12-gauge single-barrel break-open shotgun fired at her from a distance of three to six feet at 1:00 a.m. on December 27, 1996. The shot was fired after Ms. Hunter had telephoned from the couple's residence for emergency help. The 911 operator heard a male and female engaged in a violent argument, then a popping sound followed by the male voice using profanity and the female wheezing and gasping. A second phone call to 911 from the Hunter/Mack residence was placed by a crying man who identified himself as David Mack and reported that he had shot his wife. Appellant repeated his admission to the officers who arrived on the scene, and told them the victim should not have gone out and come home so late. The officers found a shotgun in the room with the victim's body. In a videotaped statement to the investigating officer three hours after the crime,[2] appellant stated that, upon her return that night, his wife had angered him by calling him names and comparing the size of his penis disfavorably with that of another man. Appellant said he then went to a storage shed where he got the shotgun, and returned to the home where he asked his wife to recant her statements. When she did not, he pointed the gun at her legs and pulled the trigger, but the gun did not fire. He then opened the breech and, when she angered him again, he closed the breech and fired again, this time fatally striking his wife in the abdomen.

At trial, a man and woman with whom appellant and the victim had spent the evening of December 26, testified on behalf of the State. The man stated that appellant had told him repeatedly that evening that he was going to kill the victim. The woman testified that appellant left between 9:30-9:45 p.m., and that the victim stayed until 12:30 a.m. The witness identified a snapshot introduced into evidence as having been taken on December 26 at the victim's request because the victim stated she thought it might be the last time the two witnesses saw her.

The decision to grant a new trial on the grounds that the verdict is strongly against the weight of the evidence

> is one that is solely in the discretion of the trial court. [Cit.] . . . Whether an appellant is asking this court to review a lower court's refusal to grant a new trial or its refusal to grant a motion for directed verdict, this court can only review the case under the standard espoused in *Jackson v.*

---

[2] The videotape was viewed by the jury.

*Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict. [Cit.]

*Willis v. State,* 263 Ga. 597 (1) (436 SE2d 204) (1993). In light of the evidence summarized above, we conclude that a rational trier of fact could find appellant guilty beyond a reasonable doubt of malice murder and possession of a firearm during the commission of a crime, and the trial court did not err when it denied appellant's motion for new trial. *Jackson v. Virginia,* supra.

2. Appellant next contends the trial court erred in its charge on voluntary manslaughter. Appellant had requested a voluntary manslaughter instruction found in the Suggested Pattern Jury Instructions, Criminal Cases (2nd ed.). See Charge 4 (B) (3). It would have informed the jury that killing one's spouse for past acts of adultery was murder, but if the homicide was done under a violent, sudden and irresistible passion other than malice, the defendant could be found guilty of voluntary manslaughter. A definition of voluntary manslaughter was included. Rather than give appellant's requested charge, the trial court gave Charge 4 (B) (5) (a) & (b) of the Suggested Pattern Jury Instructions, which defined voluntary manslaughter and informed the jury that provocation by words alone would not justify the excitement of passion in the defendant sufficient to reduce the offense to voluntary manslaughter. Appellant contends that the trial court's inclusion of the charge concerning provocation vitiated his "defense" that his wife's taunting words provided sufficient provocation to reduce the act which resulted in her death from murder to voluntary manslaughter.

Voluntary manslaughter occurs when one kills another human being under circumstances which would otherwise be murder, if the killer "acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . ." OCGA § 16-5-2 (a). Whether there is evidence to support a finding that the defendant acted "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation" is a question of law. *Pace v. State,* 258 Ga. 225 (2) (367 SE2d 803) (1988).

> [W]ords alone, regardless of the degree of their insulting nature, will not in any case justify the excitement of passion so as to reduce the crime from murder to voluntary manslaughter, where the killing is done solely on account of the indignation aroused by the use of opprobrious words. [Cit.]

(Punctuation omitted.) Id. at 226. While appellant contends that a

victim's verbal taunting of a defendant with the victim's adulterous conduct is sufficient provocation to authorize a factfinder to reduce a homicide from murder to voluntary manslaughter (see *Strickland v. State*, 257 Ga. 230 (2) (357 SE2d 85) (1987); *Brooks v. State*, 249 Ga. 583, 586 (292 SE2d 694) (1982)), there was no evidence that appellant's homicidal acts were preceded by the victim verbally taunting appellant with her adulterous conduct. According to appellant's tape-recorded statement, the victim called him names, cursed him, laughed at him, and derided his physique, but there was no evidence that the victim had "recount[ed] her sexual involvement with other persons" (*Strickland v. State*, supra, 257 Ga. at 231), or that she "bragg[ed] about . . . her sexual activities with another gentleman." *Brooks v. State*, supra, 249 Ga. at 585. Accordingly, since there was no evidence to support a finding that the victim had taunted the appellant with her extra-marital sexual exploits, the trial court's instruction to the jury that words alone did not constitute sufficient provocation to reduce murder to voluntary manslaughter was not error.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 1, 2000 —
RECONSIDERATION DENIED MAY 30, 2000.

*Jackson & Schiavone, Michael G. Schiavone,* for appellant.
*Spencer Lawton, Jr., District Attorney, Ronald M. Adams, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.