## S11A1865. DAVIS v. THE STATE.
(721 SE2d 886)

CARLEY, Presiding Justice.

After a jury trial, Appellant Kevin Elwood Davis was found guilty of felony murder and aggravated assault. The trial court entered a judgment of conviction for murder and sentenced Appellant to life imprisonment. The aggravated assault count merged into the felony murder conviction. Appellant appeals after the denial of a motion for new trial.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that during the early morning hours of February 5, 2007, Appellant smothered to death his wife, Rachel Davis, in their bedroom while their two children slept down the hall. Appellant was scheduled to be at work delivering newspapers for the Atlanta Journal-Constitution at 1:30 a.m., but he overslept and never reported for work. The victim awoke that morning around 5:00 a.m. At some point, an argument arose during which the victim informed Appellant that she no longer loved him. In response, Appellant confronted his wife about a mysterious cell phone and demanded to know the name of the man she was seeing. The victim replied that it was none of Appellant's business who she was seeing. Appellant then

---

[*] The murder occurred on February 5, 2007, and the grand jury returned the indictment on October 18, 2007. The jury found Appellant guilty on December 11, 2008, and on December 16, 2008, the trial court entered the judgment of conviction and sentence. The motion for new trial was filed on December 17, 2008, amended on April 19, 2011, and denied on April 25, 2011. Appellant filed the notice of appeal on May 24, 2011. The case was docketed in this Court for the September 2011 term and submitted for decision on the briefs.

jumped on top of her in the bed and smothered her to death.

Appellant later awoke the two children and helped them get ready for school. He told them that their mother was sick. After getting dressed, the daughter entered her parents' bedroom and noticed her mother lying on her stomach on the bed and Appellant sitting on the floor looking at a wedding album. The daughter then caught the bus to school, and Appellant took his son to daycare. When Appellant returned home, he moved his wife's van into the garage where no one could see it. He then left the home once again in an attempt to complete his wife's newspaper route. During this time, he called his ex-wife, Winona Newman, who lived in Pennsylvania.

When Ms. Newman received the call from Appellant, she was on the campus of Temple University helping her daughter enroll in college. Appellant informed Ms. Newman that his wife had told him she was having an affair, wanted a divorce, and only married him because she was pregnant. Appellant eventually admitted to Ms. Newman that he choked his wife and thought he had killed her. Ms. Newman then screamed, "Why did you kill her?" A local police officer heard her scream, and Ms. Newman relayed Appellant's story to the officer, who was able to radio a dispatcher who alerted the proper authorities in Georgia. Officers were sent to Appellant's residence where they found the deceased victim. Appellant later was apprehended inside the local courthouse where he had gone to turn himself in.

Appellant contends that the evidence was insufficient to convict him of felony murder and aggravated assault as alleged in the indictment, which stated that Appellant committed the offense of aggravated assault against the victim "with an unknown instrumentality that covered her external nose and mouth air passages, blocking normal respiration" in order to suffocate her. Appellant claims that the prosecution did not present sufficient evidence to prove beyond a reasonable doubt that the manner of assault was suffocation instead of choking. In order to find Appellant guilty of felony murder and aggravated assault, the jury must find that he committed the offenses in the manner alleged in the indictment. *Elrod v. State*, 238 Ga. App. 80, 82 (2) (517 SE2d 805) (1999). Therefore, we must assess whether the evidence, reviewed in the light most favorable to the State, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Appellant committed felony murder and aggravated assault by suffocating the victim with an unknown instrumentality. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

At trial, the medical examiner testified that, in his opinion, the cause of the victim's death was suffocation. He stated that he came

to this conclusion due to the lack of anatomic findings. For example, he testified that the victim did not have hemorrhaged blood vessels in her face, her neck bone was not broken, and she did not have any bruising or marks on her neck, all of which would be characteristic of a choking death. The medical examiner also testified to a few positive findings consistent with suffocation, such as a laceration to the victim's tongue that was likely caused by constant pressure on the mouth and the fact that only one of her bottom teeth broke through the skin of her mouth, which is also more suggestive of a constant pressure than a powerful punch to the mouth. Although Appellant told Ms. Newman over the phone that he choked his wife, there is no other evidence to corroborate that statement while there is much physical and scientific evidence that points to the cause of death as suffocation. Therefore, the jury was authorized to find that the evidence was sufficient to find Appellant guilty beyond a reasonable doubt of felony murder during the commission of aggravated assault in the manner alleged in the indictment. *Jackson v. Virginia*, supra.

2. Appellant's sole defense to the charges of malice murder and felony murder was that he committed the lesser offense of voluntary manslaughter, which required the jury to find that Appellant caused the victim's death "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . ." OCGA § 16-5-2 (a). Although the jury was given a special verdict form requiring consideration of this lesser offense prior to murder, Appellant contends that the trial court erred when it charged the jury that words alone were insufficient provocation to support a verdict of manslaughter and that it must find that words were accompanied by menaces in order to sustain a manslaughter verdict. Appellant points to two cases from this Court that have held that adulterous conduct accompanied by words alone suffices to reduce the crime from murder to manslaughter. See *Strickland v. State*, 257 Ga. 230, 231-232 (2) (357 SE2d 85) (1987); *Brooks v. State*, 249 Ga. 583, 586 (292 SE2d 694) (1982).

However, the present case is distinguishable from *Strickland* and *Brooks*. This Court in *Strickland* held that a jury charge of voluntary manslaughter was erroneous for stating that the victim's adulterous conduct and her recounting of her sexual involvement immediately before the crime was committed were irrelevant to the issue of whether there was sufficient provocation. *Strickland v. State*, supra. In *Brooks*, we held that the trial court erred by refusing to charge the jury on the law of voluntary manslaughter, stating that the victim's taunting of the defendant with her adulterous conduct served as sufficient provocation under OCGA § 16-5-2 (a). *Brooks v.*

*State*, supra. However, in the present case, there is no evidence that the victim recounted her adulterous conduct to Appellant or taunted him with descriptions thereof. In fact, the only evidence that the victim even committed adultery was that Appellant told Ms. Newman on the phone that his wife admitted to an affair. At trial, Appellant testified about some problems with his marriage, but he never said that his wife told him that she was having an affair. Appellant testified that he asked his wife "who was the person" and that she replied it was none of his business. There was certainly no evidence that the victim recounted, taunted, or bragged about her sexual involvement with other men.

The facts of the present case are more similar to those in *Mack v. State*, 272 Ga. 415 (529 SE2d 132) (2000), a case in which the appellant, who was convicted of murdering his allegedly adulterous wife, also challenged the trial court's instruction to the jury that words alone do not constitute sufficient provocation to reduce murder to voluntary manslaughter. This Court held that the jury charge was not erroneous because "there was no evidence that appellant's homicidal acts were preceded by the victim verbally taunting appellant with her adulterous conduct." *Mack v. State*, supra at 418 (2). In fact, the circumstances in *Mack* constitute more provocation than those here as there was evidence in *Mack* that "the victim called [the appellant] names, cursed him, laughed at him, and derided his physique. . . ." *Mack v. State*, supra. In the present case, there was no evidence of any sort of taunting by the victim with adulterous conduct or comments regarding any perceived inadequacies of Appellant. Therefore, the circumstances regarding the victim's alleged adulterous conduct are not of the type contemplated by this Court in *Strickland* and *Brooks* and thus do not suffice to replace the requirement of menaces. Accordingly, the trial court's instruction to the jury regarding voluntary manslaughter was not erroneous.

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 23, 2012.

*Lee W. Fitzpatrick*, for appellant.

*T. Joseph Campbell, District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General*, for appellee.