FINAL COPY
294 Ga. 677

S13A1543.  BROWN v. THE STATE.

HINES, Presiding Justice.

Kenneth Brown appeals from his convictions and sentences for the crimes of malice murder, aggravated assault, and giving false information to a law enforcement officer, all in connection with the axe slaying of Charlotte Grant. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Brown and Grant were in a romantic relationship and lived together; Grant's two adult children, Keith and Christina Medley, also lived in the home.  However, Grant remained married to another man.  On December 24, 2010, Brown discovered that Grant had spoken by cell phone to her estranged husband, who lived out of

---

[1] Grant was killed on December 24, 2010.  On April 29, 2011, a Lowndes County grand jury indicted Brown for the malice murder of Grant, the aggravated assault of Keith Medley, the crime of giving false information to a law enforcement officer, and for being a "recidivist." Brown was tried before a jury January 9-11, 2012.  He was found guilty of malice murder, aggravated assault, and giving false information to a law enforcement officer; the "recidivist" charge was not presented to the jury. On January 17, 2012, Brown was sentenced to life in prison for malice murder, and consecutive terms of 20 years and 12 months in prison for  aggravated assault and giving false information to a law enforcement officer.  Brown moved for a new trial on February 3, 2012; he amended the motion on February 8, 2012, again on October 12, 2012, and finally on October 15, 2012.  On October 30, 2012, the motion, as amended, was denied.  On November 15, 2012, Brown filed a notice of appeal; the appeal was docketed in this Court for the September 2013 term and submitted for decision on the briefs.

state.  Brown and Grant argued, and Grant asked her son Keith Medley ("Medley") to get Brown's sister, Annie Pride ("Pride"), from next door, in hopes that Pride could convince Brown to leave.  After Pride arrived, the argument continued, with Pride and Medley joining it, and Medley pushed Brown on the shoulder; at no time did Grant and Brown have physical contact. Brown left the house and returned with an axe, partially concealed behind his back.  Brown then swung the axe repeatedly at Grant and Medley, using both hands; he did not speak while doing this.  Medley and Grant attempted to retreat to the rear of the house where a door led outside, but Brown struck Grant multiple times with the axe.  Grant fell limp, and Medley laid her in the doorway of the back door to the house and then ran to a nearby house to call 911.  Pride summoned her husband Leon, who discovered Brown near the back door standing next to Grant with what appeared to be a stick; he told Brown to leave, and later realized that the stick was an axe.

Brown left the axe in the yard of an adjacent house; the attack left blood on Brown's clothing.  Grant was fatally wounded, receiving at least four axe wounds to her skull and another axe wound to her body.  Shortly after the killing, Brown was found by a police officer two blocks away.  He gave the

officer a false name and birth date and was arrested and taken to a police station.

At the police station, Brown first told an investigating detective that he did not wield the axe, but that Medley had procured the axe in the rear of the house, began swinging it at Brown, and Grant was injured thereby. When confronted with information the detective had gained through interviews with witnesses, Brown attempted to maintain his first version of events, then admitted that he had obtained the axe from outside the front door of the house, but claimed he did so because he was concerned that Medley might acquire a knife or other weapon from the rear of the house. Brown further stated that: even though Medley pushed him, it did not injure him; Medley displayed no other physical aggression toward him; and, he never saw Medley with a weapon. Brown also said that he argued with Grant because he provided the money for the household, and he did not want her speaking with her husband. He also stated that he was angry that Grant said that she would return to her husband. Brown further stated that he did not intend to harm Grant, but that when he was swinging the axe, he "possibly" struck her. The detective testified that Brown appeared to be angry that Medley had pushed him.

1. The evidence authorized the jury to find Brown guilty beyond a

3

reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Seven months before trial, Brown moved to have incriminating statements he made during a custodial interview suppressed, contending that they were made in violation of *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966); the motion also asserted that the incriminating statements "violate[d]" *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964). The motion was addressed, and denied, by a different judge than the one who presided at trial.[2] At trial, before opening statements, Brown's attorney said, "I think that the ruling by that judge is not appropriate, and does not carry the weight," and requested that another *Jackson v. Denno* hearing be conducted before the State introduced evidence of any such incriminating statements. This was denied, as was Brown's similar motion made when the law enforcement officer to whom the statements were made was called to testify.

Brown contends that the order denying the motion to suppress is infirm because it does not explicitly state that the statements were made voluntarily.

---

[2] Although no transcript of the hearing on the motion appears in the record, during argument before the trial court, the State declared, without contradiction, that the hearing was held on August 15, 2011.

4

First, we note that in this case there is more than merely an implicit denial of the motion to suppress on the authority of *Jackson v. Denno*; the trial court explicitly denied the motion. Compare *Colton v. State*, 292 Ga. 509, 513 (3) (739 SE2d 380) (2013); *Hicks v. State*, 255 Ga. 503, 503-504 (1) (340 SE2d 604) (1986). Nor is this a case in which the record reveals that the trial court erroneously believed that the question of whether the statements were freely and voluntarily made was simply for the jury. Compare *Parker v. State*, 255 Ga. 167, 168 (2) (336 SE2d 242) (1985).

> In any event, this Court has previously noted
>
> our preference for trial courts to make findings of fact, if the evidence warrants them, substantially as follows: I find from a preponderance of the evidence that the defendant was advised of each of his *Miranda* rights, that he understood them, that he voluntarily waived them, and that he thereafter gave his statement freely and voluntarily without any hope of benefit or fear of injury. (If the defendant denies having been advised of any one of his *Miranda* rights or says that he requested an attorney, specific findings as to the point in controversy should also be made.)

*Bryant v. State*, 268 Ga. 664, 666 (6) (492 SE2d 868) (1997). But, the order denying Brown's motion did not follow this recommended procedure. "Generally, such a failure would require a remand for clarification. See *Parker v. State*, 255 Ga. [at] 168 (1)." Id. at 667. However, Brown does not assert to

5

this Court that there is evidence that would render the statements inadmissible for any reason, resting his argument solely on the procedural ground, and the record does not reveal such evidence. Therefore, we will not remand this case. Id. "However, we would remind the trial courts of this state of our preference for findings of fact which comport with the form suggested in *Berry v. State*, [254 Ga. 101, 104-105 (1), n. 6 (326 SE2d 748) (1985)]." Id. See also *Nelson v. State*, 208 Ga. App. 686, 687 (2) (431 SE2d 464) (1993).

3. Brown submitted a written request to charge the jury the law regarding voluntary manslaughter as a lesser included offense of malice murder, but the trial court did not give the charge. See OCGA § 16-5-2 (a).[3] Brown contends that failing to give the instruction was error. "It is a question of law whether there is any evidence to support a finding that the defendant acted 'solely as the result of a sudden, violent, and irresistible passion resulting from serious

---

[3] OCGA § 16-5-2 (a) reads:
A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

provocation sufficient to excite such passion in a reasonable person. . . .' OCGA § 16-5-2 (a). [Cit.]" *Paul v. State*, 274 Ga. 601, 605 (3) (b) (555 SE2d 716) (2001).

First, there was no basis for giving the requested instruction based upon physical provocation. Pretermitting whether physical or other provocation on Medley's part could support an instruction on voluntary manslaughter as to the killing of Grant, see *Howard v. State*, 288 Ga. 741, 746 (4) (707 SE2d 80) (2011), "[t]his Court has repeatedly held that neither fear that someone is going to pull a gun nor fighting prior to a homicide are types of provocation demanding a voluntary manslaughter charge. [Cits.]" *Funes v. State*, 289 Ga. 793, 794 (2) (716 SE2d 183) (2011). Further, "[t]his Court has repeatedly held . . . that 'acting out of fear is not the same as acting in the heat of a sudden irresistible passion' as required by OCGA § 16-5-2 (a). [Cits.]" *Baugh v. State,* 293 Ga. 52, 55 (3) (743 SE2d 407) (2013).[4]

Nor does the mere fact that Brown and Grant argued before he left the house, retrieved the axe, and began his attack support an instruction on

---

[4] The trial court instructed the jury on the law regarding defense of self as it pertained to the charge of aggravated assault against Medley.

voluntary manslaughter.

> As a matter of law, angry statements alone ordinarily do not amount to "serious provocation" within the meaning of OCGA § 16-5-2 (a). [Cit.] "To put it simply, words alone [generally] are not sufficient provocation to excite the passion necessary to give rise to voluntary manslaughter." [Cit.]

*Merritt v. State*, 292 Ga. 327, 331 (3) (737 SE2d 673) (2013). Brown suggests that the argument coupled with sexual jealousy on his part constituted provocation sufficient to authorize the jury instruction. Although it has been held that adulterous conduct together with words can support an instruction on voluntary manslaughter, see *Davis v. State*, 290 Ga. 421, 423-424 (2) (721 SE2d 886) (2012), there is no evidence that Grant had recently engaged in any sexual relations with her out-of-state husband, or that she taunted Brown with such conduct. Compare *Strickland v. State*, 257 Ga. 230, 231-232 (2) (357 SE2d 85) (1987); *Brooks v. State*, 249 Ga. 583, 586 (292 SE2d 694) (1982). The trial court did not err in refusing to give the requested instruction on voluntary manslaughter.

   Judgments affirmed. All the Justices concur.

Decided March 3, 2014.

Murder. Lowndes Superior Court. Before Judge Horkan.

Jon W. McClure, for appellant.

J. David Miller, District Attorney, Tracy K. Chapman, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ryan A. Kolb, Assistant Attorney General, for appellee.