In the Supreme Court of Georgia

Decided:  November 3, 2014

S14A0910. LYNN v. THE STATE.

BLACKWELL, Justice.

Appellant James Morris Lynn, Jr. was tried by a Barrow County jury and convicted of the murder of Tonya Lynn, his wife of sixteen years. At trial, Appellant did not dispute that he killed Tonya, but he claimed that her killing was only voluntary manslaughter, arguing that it was provoked by, among other things, her admission that she recently had been unfaithful. The trial court permitted Appellant to testify about this admission, but it refused to allow additional evidence of her recent infidelity, including the testimony of two men with whom she allegedly was having extramarital affairs around the time of her death. On appeal, Appellant contends that the trial court erred when it disallowed this additional evidence as irrelevant. We agree and reverse his conviction.[1]

---

[1] Tonya was killed in July 2011. Three months later, Appellant was indicted and charged with malice murder, felony murder, and aggravated assault. His trial began on June

1. Viewed in the light most favorable to the verdict, the evidence shows that — late on the evening of July 26, 2011 or in the early hours of the following day — Appellant and Tonya argued in their Winder home, and at the conclusion of their argument, Appellant beat Tonya with a baseball bat. Tonya died as a result of the beating, and Appellant hid her body in a well. Eventually, Appellant confessed these things to investigators, and he directed them to the well, where they found Tonya's body. When Appellant testified at trial, he acknowledged again that he had beaten Tonya to death. Appellant does not dispute that the evidence is legally sufficient to sustain his conviction, but consistent with our usual practice in murder cases, we have considered the sufficiency of the evidence. Upon our review of the record, we conclude that the evidence presented at trial was more than sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Appellant was guilty of Tonya's

11, 2012, and the jury returned its verdict on June 14, finding Appellant guilty on all counts. Upon the verdict, Appellant was convicted of malice murder — the verdict as to felony murder was vacated by operation of law, and the aggravated assault merged with the malice murder, see Malcolm v. State, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993) — and sentenced to a term of imprisonment for life without the possibility of parole. Appellant timely filed a motion for new trial on July 13, 2012. The trial court denied his motion on November 26, 2013, and Appellant timely filed a notice of appeal that same day. The case was docketed in this Court for the April 2014 term and submitted for decision on the briefs.

murder. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Having acknowledged that he killed Tonya, Appellant argued at trial that the killing was "the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person," and for that reason, it amounted only to voluntary manslaughter. See OCGA § 16-5-2 (a). In support of this claim, Appellant relied mostly on his own account of the argument that preceded the killing, as reflected in his testimony at trial, as well as pretrial statements that he had made to investigators. By that account, Tonya wanted a divorce, and she and Appellant had been arguing about it for several days. When Appellant came home on July 26, he saw that Tonya had packed her bags, and he saw her using a mobile phone that he did not recognize. Appellant retired to their bedroom for the evening, where he fell asleep. He was awakened, however, by Tonya, who resumed their argument. According to Appellant, Tonya declared her intention to leave and take their children, said that Appellant could not provide adequately for her, characterized Appellant as a horrible person and a terrible father, and insisted that he never again would "see her naked." Tonya then swung a baseball

3

bat at Appellant, he said, which he snatched away and used to beat her. On these points, the testimony given by Appellant at trial was generally consistent with his statements before trial to investigators.

In his trial testimony, however, Appellant added some other details that he had not previously shared with investigators. In the course of the argument that preceded the killing, Appellant said at trial, Tonya also disclosed that she recently had been unfaithful to him and that she not only was leaving him, but was leaving him for other men. Appellant already knew, he admitted, that Tonya had been unfaithful earlier in their marriage, and in fact, she had left him for awhile to live with her "boyfriend," David. But Appellant and Tonya had reconciled, and she had promised to keep away from David and to stay faithful to Appellant. Nevertheless, according to Appellant, just before he killed Tonya, she said that she had resumed her affair with David and was leaving Appellant again to live with David. Appellant testified that Tonya admitted that she also was having an affair with a coworker, Todd. And he added that Tonya spoke of her intent to continue to see both David and Todd, as well as her inability to be satisfied by only one man. On these points, the prosecuting attorney challenged the testimony given by Appellant at trial, pointing out that Appellant had said

4

nothing to investigators about a recent disclosure of infidelity, and implying strongly that Appellant had fabricated entirely this part of his testimony.

After he testified, Appellant sought to present additional evidence that Tonya was, in fact, having extramarital affairs with David and Todd around the time of her death. In particular, Appellant sought to elicit testimony from David and Todd about their relationships with Tonya, and he sought to elicit testimony from her supervisor about Tonya holding herself out as "single" at work and receiving flowers from men. Appellant also sought to present evidence that forensic examiners had found Todd's semen on Tonya's body, indicating that she had been intimate with Todd only a short time before her death. The trial court, however, disallowed this evidence, ruling that it was irrelevant. Appellant contends that the refusal of this evidence was error, and we agree.

For his claim at trial that the killing of Tonya was only voluntary manslaughter, Appellant asserted that he was provoked to kill her by her assault upon him with the bat, as well as the things she said in the course of their argument. As for the assault, it certainly could form a basis for a finding of provocation. See Cash v. State, 258 Ga. 460, 462 (3) (368 SE2d 756) (1988). As for the things that Tonya said to Appellant, words *alone* do not amount to the

sort of provocation necessary to reduce a murder to manslaughter. See Brown v. State, 294 Ga. 677, 681 (3) (755 SE2d 699) (2014). See also Gresham v. State, 289 Ga. 103, 104 (2) (709 SE2d 780) (2011); Todd v. State, 274 Ga. 98, 101 (4) (549 SE2d 116) (2001); Mack v. State, 272 Ga. 415, 417 (2) (529 SE2d 132) (2000). But words that disclose the adulterous conduct of a spouse are not *just* words, at least to the extent that they cause the accused to genuinely and reasonably believe that his spouse has been unfaithful. Indeed, in a number of cases, we have held that the discovery that a spouse has been unfaithful — whether the accused sees evidence of the infidelity or hears about it from the unfaithful spouse or another — can amount to sufficient provocation. See, e.g., Goforth v. State, 271 Ga. 700, 701 (1) (523 SE2d868) (1999); Strickland v. State, 257 Ga. 230, 231-232 (2) (357 SE2d 85) (1987); Brooks v. State, 249 Ga. 583, 585 (292 SE2d 694) (1982).

If the jury had accepted Appellant's testimony about Tonya confessing her renewed and recent infidelity just before he killed her, that testimony might properly have formed a basis for the jury to find that the killing only amounted to voluntary manslaughter. Whether that testimony was credible, however, was hotly disputed, the prosecuting attorney suggesting on cross-examination that

it was fabricated. As a result, whether Tonya, in fact, told Appellant that she was having extramarital affairs with David and Todd just before Appellant killed her appears to have been an important and disputed issue at trial. Proof of any circumstance that would tend to make it more or less likely that Tonya actually confessed recent infidelity just before Appellant killed her would bear upon this issue and would be relevant. See McGee v. State, 267 Ga. 560, 565 (4) (480 SE2d 577) (1997) ("[a]ny evidence is relevant which logically tends to prove or to disprove a material fact which is at issue in the case").[2]

At least in the circumstances of this case, we think that proof that Tonya really was having affairs with David and Todd would tend to make it more likely that she, just as Appellant testified, told him of those affairs in the minutes before he killed her. Such proof certainly is not dispositive of the question. One having an adulterous affair might choose, of course, not to reveal it, even when leaving her spouse. Likewise, one never having had an adulterous affair, we suppose, might lie about it in the heat of an argument, if only to hurt or provoke her spouse. And no doubt, other proof may be *more* probative of whether Tonya

---

[2] Because this case was tried before January 1, 2013, our former Evidence Code applied at the trial. In the new Evidence Code, the provisions concerning relevance can be found at OCGA § 24-4-401 et seq.

7

said the things that Appellant attributed to her in his testimony, such as the consistency of his testimony with his earlier statements to investigators. But all that is for a jury to resolve. See Freeman v. State, 158 Ga. 369, 371 (123 SE 126) (1924) (it is for the jury to determine what facts are proven, to weigh the evidence, and to decide if defendant is guilty of murder or voluntary manslaughter). If Tonya was, in fact, engaged in adulterous affairs with David and Todd around the time of her death, that arguably makes it somewhat more likely that Tonya, in fact, spoke to Appellant of those affairs. As such, proof of the recent affairs with David and Todd is relevant in this case, and the trial court erred when it concluded otherwise.[3]

---

[3] Appellant cites Strickland, 257 Ga. at 230, a case in which this Court held that it was error for a trial court to charge the jury that proof of the victim's infidelity "should be considered not for the purpose of determining whether the victim had sexual relations with others but solely for the purpose of determining whether she had recounted her adulterous activity as the defendant claimed just before he shot her." 257 Ga. at 231 (2). That charge was error, this Court explained, because whether the victim had an adulterous affair — not just whether she *said* she had such an affair — was "not only relevant, but critical to the voluntary manslaughter claim." Id. at 232 (2). The idea that the culpability of an accused depends not so much on what he has actually seen and heard and what he, as a result, genuinely and reasonably believes — but instead depends on the *truth* of what he has heard, even if that truth is unknown and perhaps unknowable to him — strikes some of us as a bit strange, and indeed, we have found no other Georgia precedent that supports that notion. We need not decide in this case, however, whether Strickland is correct on that point. Even if Strickland is wrong, the evidence about which Appellant in this case complains still would be relevant to the indisputably material question of whether Tonya, in fact, disclosed recent adultery to Appellant.

8

The State contends that Appellant could not possibly have been provoked to "a sudden, violent, and irresistible passion" by any disclosure of infidelity by Tonya, inasmuch as he admitted that he had known for a long time that Tonya had been unfaithful to him on several occasions earlier in the marriage, and for this reason, the State argues, the exclusion of evidence about her adultery was not error. No doubt, "unless a defendant can show that he killed his [spouse] under a violent, sudden impulse of passion due to his [spouse's] adultery," evidence of such adultery is "irrelevant and inadmissible." Powell v. State, 286 Ga. 14, 15 (2) (685 SE2d 79) (2009). But even if Appellant was aware of earlier infidelities, there is no evidence that Appellant knew, before the argument that preceded his killing of Tonya, that she had resumed an affair with David, even after she and Appellant had reconciled. And there is no evidence that Appellant knew *anything at all* about an affair with Todd prior to that argument. The contention of the State is a perfectly reasonable one to put to a jury, but it is just that, an argument for the jury. We cannot say as a matter of law that Appellant, having been aware for some time of long past infidelities, could not reasonably be provoked by the fresh disclosure of new infidelities so as to reduce the killing of his wife to voluntary manslaughter.

9

We have considered whether the erroneous refusal to admit evidence of infidelity by Tonya — beyond the testimony of Appellant, that is — might have been harmless, but we cannot conclude that it was. As we have explained, Appellant offered no defense at trial and claimed only that the killing was voluntary manslaughter and not murder.[4] A basis for that claim was the notion that Appellant was provoked to kill Tonya by her disclosure of recent adultery. Whether Tonya said the things about adultery that Appellant attributed to her was a critical issue at trial. It was a disputed issue, insofar as the State suggested that Appellant had fabricated his testimony on that point. And his challenged testimony was the *only* evidence that the trial court allowed on this important and disputed question. We cannot say that the erroneous refusal to admit *any* other evidence bearing upon the question was harmless. For these reasons, we reverse the judgment of conviction.

Judgment reversed. All the Justices concur.

---

[4] A claim that a killing is only voluntary manslaughter is not, strictly speaking, a "defense" to a murder charge. See Wyman v. State, 278 Ga. 339, 340-341 (3) (602 SE2d 619) (2004).