303 Ga. 847
FINAL COPY

S18A0028. WARE v. THE STATE.

GRANT, Justice.

Appellant Robert Ware was found guilty of felony murder and other crimes in connection with the December 2015 shooting death of his wife, Michelle Ware.[1]  On appeal, Ware asserts that the evidence at trial was insufficient to support his felony murder conviction, and that the trial court erred in denying his request for a jury instruction on voluntary manslaughter and in allowing the State to introduce a piece of "other acts" evidence under OCGA § 24-4-404 (b).  Because we find no reversible error, we affirm.

I.

---

[1] The murder was committed on December 6, 2015.  On March 1, 2016, Ware was indicted by a Richmond County grand jury for malice murder, felony murder predicated on aggravated assault, possession of a firearm during the commission of a crime, and cruelty to children in the third degree.  At the conclusion of a trial held from February 6-9, 2017, a jury found Ware not guilty of malice murder but guilty of all remaining counts of the indictment. The trial court sentenced Ware to life imprisonment without parole for felony murder, five years consecutive for the firearm count, and twelve months concurrent for the cruelty to children count.  Ware forwent a motion for new trial and instead filed a timely notice of appeal on March 13, 2017.  The appeal was docketed to the term of this Court beginning in December 2017 and submitted for a decision on the briefs.

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed that Ware spent the afternoon of December 6, 2015 watching a football game and drinking beer at a friend's house. When Ware got home that evening, he was confronted by his wife Michelle, who expressed frustration about his drinking (an ongoing issue for the couple) and his lack of employment. Ware expressed remorse, but Michelle said that she did not think he'd be able to change. She then said, "Robert, I'm seeing somebody else that I'm in love with." Ware looked at her without speaking, and Michelle continued, "It's not going to work between us because I can't love you no more." Ware then grabbed a pistol from the drawer next to him and shot Michelle at close range in the back of the head. Not wanting their nine-year-old daughter (who was in the shower) to see him, Ware fled the scene.

After Ware fled, Michelle's nineteen-year-old daughter (Ware's stepdaughter), who was also at the residence at the time of the shooting, found Michelle lying on the floor, bloodied and unresponsive. Michelle's older daughter called 911 and tried, unsuccessfully, to resuscitate her mother. When police arrived, the older daughter told them that Ware had killed her mother, and police issued a "be on the lookout" for Ware.

That same night, a Georgia state trooper spotted Ware's vehicle driving in Washington, Georgia and activated his blue lights. Ware first increased his speed, but then stopped after a short, high-speed pursuit. Other officers arrived on the scene, and Ware was arrested. Police recovered a firearm from Ware's vehicle, and testing later confirmed that it had fired the bullet recovered during Michelle's autopsy.

Ware admitted to the jury that he shot and killed Michelle after she told him that she was seeing someone else whom she loved. He also testified that about two months before the shooting, he saw Michelle hug and kiss another man at her place of employment. And he told the jury that about a month later, he had discovered a receipt from a Florida hospital under the mattress that he and Michelle shared, but that he had been unaware that Michelle had traveled to Florida. According to Ware, when he confronted Michelle about the Florida receipt, she said "it's nothing." Later, in an unprompted conversation, Michelle said that when she went to the hospital in Florida, she was prescribed something that caused her to have "female issues," and she asked Ware if he had been having any issues "downstairs." These events led Ware to doubt Michelle's fidelity. Ware's neighbor also testified that Ware had periodically shared his suspicion that Michelle was cheating on him, and had said a few

months before the killing that he had come close to shooting and killing her the night before. Forensic evidence, including the presence of Michelle's DNA on the firearm recovered from Ware's vehicle and the presence of gunshot residue on Ware's clothing, further confirmed that Ware was the shooter.

## II.

Ware argues that the evidence supporting his felony murder conviction is insufficient because he acted on impulse and in the heat of passion when Michelle told him that their relationship was over and that she loved another man, thus showing a lack of evidence that he intended to kill her. This argument is meritless and misplaced. Felony murder does not require intent to kill; rather, "[f]elony murder requires only that the defendant possessed the requisite criminal intent to commit the underlying felony"—in this case, aggravated assault, which also does not require intent to kill. *Chapman v. State*, 275 Ga. 314, 316 (565 SE2d 442) (2002). And in any event, "[c]riminal intent is a question for the jury and may be inferred from conduct before, during and after the commission of the crime." *Glenn v. State*, 279 Ga. 277, 277-278 (612 SE2d 478) (2005) (citation and punctuation omitted). Given Ware's admission at trial that he shot and killed Michelle, his prior statements that he suspected her of "cheating on him" and that he had "almost" shot and killed

her before, his flight from the scene and subsequent flight from law enforcement, and the other evidence admitted at trial indicating that he shot Michelle, the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Ware was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979); see also *Faust v. State*, 302 Ga. 211, 213 (805 SE2d 826) (2017) ("[C]onflicts in the evidence, questions about the credibility of witnesses, and questions about the existence of justification are for the jury to resolve.") (citation and punctuation omitted).

## III.

Perhaps more relevant to his claims that he acted out of passion, Ware argues that the trial court erred in denying his request for a jury instruction on voluntary manslaughter. Still, we disagree.

Voluntary manslaughter is the killing of another human being under circumstances that would otherwise be murder when the killer "acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). A jury charge on voluntary manslaughter "is required only when there is some evidence that the defendant acted" in this manner. *Graham v.*

*State*, 301 Ga. 675, 677 (804 SE2d 113) (2017). "And '(i)t is a question of law for the courts to determine whether the defendant presented any evidence of sufficient provocation to excite the passions of a reasonable person.'" Id. (quoting *Campbell v. State*, 292 Ga. 766, 767 (740 SE2d 115) (2013)).

We have long held that "words alone, regardless of the degree of their insulting nature, 'will not in any case justify the excitement of passion so as to reduce the crime from murder to manslaughter where the killing is done *solely on account of the indignation aroused by use of opprobrious words*.'" *Brooks v. State*, 249 Ga. 583, 585 (292 SE2d 694) (1982) (quoting *Coleman v. State*, 149 Ga. 186, 188 (99 SE 627) (1919)) (punctuation omitted; emphasis in original); see also *Paul v. State*, 274 Ga. 601, 605 (555 SE2d 716) (2001); *Pace v. State*, 258 Ga. 225, 226 (367 SE2d 803) (1988). We have recognized, however, a limited exception to this rule for words informing a defendant of "adulterous conduct." *Brooks*, 249 Ga. at 586. In that one circumstance, we have held that words alone may constitute the "serious provocation sufficient to excite" a "sudden, violent and irresistible passion" sufficient to require a jury charge on voluntary manslaughter. Id. (citation and punctuation omitted).

In *Brooks*, for example, we found that because the victim taunted her husband "with a graphic description of her sexual activities with other men,"

her "adulterous conduct rather than the words describing this conduct" authorized a jury charge on voluntary manslaughter. Id. We reiterated this point in *Lynn v. State*, finding that the victim's statements to the defendant that she "recently had been unfaithful to him," was having affairs with other men, and that she could not be satisfied by only one man "might properly have formed a basis for the jury to find that the killing only amounted to voluntary manslaughter." 296 Ga. 109, 110-112 (765 SE2d 322) (2014).

But as those cases and other decisions of this Court have made clear, in order for the conduct communicated by such words to "amount to the sort of provocation necessary to reduce a murder to manslaughter," *Lynn*, 296 Ga. at 111, they must disclose adulterous conduct or, in the case of unmarried persons, sexual relations with other persons during the course of a relationship. See, e.g., *Brown v. State*, 294 Ga. 677, 681 (755 SE2d 699) (2014); *Strickland v. State*, 257 Ga. 230, 231-232 (357 SE2d 85) (1987); *Brooks*, 249 Ga. at 585. Conversely, statements by a victim that she wants to end the relationship, is involved with or prefers the affections of another, or even has chosen to leave the defendant for another—but that stop short of disclosing extra-relationship sexual conduct—have never been deemed sufficiently provocative to excite sudden, violent, and irresistible passion in a reasonable person such that a

voluntary manslaughter charge is required. See *Brown*, 294 Ga. at 680-681; *Mayweather v. State*, 254 Ga. 660, 661 (333 SE2d 597) (1985).

In *Brown*, for example, the defendant argued that the trial court erred when it refused to give a jury instruction on voluntary manslaughter based on sexual jealousy after the victim told the defendant, her lover, that she was angry at him and was returning to her estranged husband. 294 Ga. at 680-681. We rejected this argument because "[a]lthough it has been held that adulterous conduct together with words can support an instruction on voluntary manslaughter," there was no evidence that the victim "taunted" the defendant or that she had recently engaged in "sexual relations" with her out-of-state husband. Id. at 681. Similarly, in *Mayweather*, we held that the trial court did not err in failing to charge the jury on voluntary manslaughter because the victim's statement to the defendant "that she had been out with another man on the previous night" and that she had "been with another man" were insufficient provocation to support a manslaughter charge. 254 Ga. at 661.

We have applied the same rationale in rejecting claims where defendants complained that juries were erroneously instructed that words alone were insufficient provocation to support a verdict for voluntary manslaughter in the face of evidence of victims' apparent romantic involvement with other men.

In *Davis v. State*, the victim told the defendant that she no longer loved him and that it was none of his business who else she was "seeing." 290 Ga. 421, 421 (721 SE2d 886) (2012). There was additional evidence that the victim had told the defendant that "she was having an affair, wanted a divorce, and only married him because she was pregnant." Id. at 422. We found that "the circumstances regarding the victim's alleged adulterous conduct are not of the type contemplated by this Court in *Strickland* and *Brooks*" because there was no evidence that the victim "recounted, taunted, or bragged about her sexual involvement with other men." Id. at 424. Also, in *Mack v. State*, the victim verbally taunted the defendant by "comparing the size of his penis disfavorably with that of another man," but we held that because "there was no evidence to support a finding that the victim had taunted the appellant *with her extra-marital sexual exploits*," no jury charge regarding provocation caused by adulterous conduct was required. 272 Ga. 415, 416-417 (529 SE2d 132) (2000) (emphasis supplied).

Here, Michelle's statements, "Robert, I'm seeing somebody else that I'm in love with," and "It's not going to work between us because I can't love you no more," were not sufficiently provocative to excite "sudden, violent, and irresistible passion" under OCGA § 16-5-2 (a) because they did not disclose

adulterous, sexual conduct. Rather, her statements expressed to Ware that she wanted to end their relationship and that she loved another person. These are the types of statements that we have found do not rise to the level of provocation required by Georgia's voluntary manslaughter statute. However disheartening they may be to the listener, they cannot mitigate a deadly response. And there is no evidence that Michelle taunted Ware with, bragged about, or even recounted to Ware any sexual relations with another man, as we have required in the past for adulterous conduct disclosed by words to be sufficiently provocative. Because there was no evidence of sufficient provocation to excite the passions of a reasonable person, no jury charge on voluntary manslaughter was required.

## IV.

Ware's final contention is that the trial court erroneously admitted evidence of a 1999 incident of domestic violence under OCGA § 24-4-404 (b). But in light of the overwhelming evidence of Ware's guilt—including his own admission from the witness stand at trial that he shot and killed Michelle—we need not decide whether the trial court erred in this respect because any error was harmless. See *Parks v. State*, 300 Ga. 303, 308 (794 SE2d 623) (2016) (noting that "overwhelming" evidence of guilt rendered erroneous admission

of Rule 404 (b) evidence harmless, and finding harmless error where defendant testified at trial that he shot victim).  Accordingly, this contention also fails.

Judgment affirmed.  All the Justices concur, except Blackwell, J., who concurs in judgment only as to Division III.

Decided June 18, 2018.

Murder. Richmond Superior Court. Before Judge Craig.

M. Katherine Durant, for appellant.

Natalie S. Paine, District Attorney, Joshua B. Smith, John M. Markwalter, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.